Carey E. Matovich
Katherine S. Huso
Matovich, Keller & Murphy, P.C.
2812 First Avenue North, Suite 225
P.O. Box 1098
Billings, MT  59103-1098
Telephone:  (406) 252-5500
Facsimile:  (406) 252-4613
Email:  cmatovich@mkmfirm.com
           khuso@mkmfirm.com

*Attorneys for Defendant Maryland
Casualty Company*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

|  |  |
|---|---|
| BREANNE WALDEN, DANIELLE DESCHENES AZURE, JESSICA BLACKWEASEL, SABRINA REMUS COYNE, BRITTANY DEAN, JENNIFER DEMENT, DANIELLE DUNCAN, JACKIE GREAVU, BETH HAYES, JANA HEILIG, KEALLIE LIETZ, JACKIE MULLENNAX, SARA ONSAGER, ANNA RADFORD, BARBARA SLOAN, MOLLY STILSON, and KYRA TILSON, Individually and as Assignees of DB&D, LLC (d/b/a DAHL'S COLLEGE OF BEAUTY), | CAUSE NO. CV-13-222-M-DLC<br><br>**DEFENDANT MARYLAND CASUALTY COMPANY'S BRIEF IN SUPPORT OF MOTION TO COMPEL DISCOVERY RESPONSES** |
| Plaintiffs, | |

|  | ) |
| vs. | ) |
|  | ) |
| MARYLAND CASUALTY | ) |
| COMPANY, and DOES 1-5, inclusive, | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

Defendant Maryland Casualty Company ("Maryland Casualty") submits this Brief in Support of its Motion to Compel Discovery Responses.

## BACKGROUND

Plaintiffs filed this action against Maryland Casualty on October 29, 2013, alleging that Maryland Casualty breached its duty to defend and indemnify Dahl's College of Beauty ("Dahl's") in the underlying lawsuit. See *Plaintiffs' Complaint* (Dkt. 1). Plaintiffs also allege that Maryland Casualty violated Montana's Unfair Trade Practices Act ("UTPA"). *Id.* Maryland Casualty denies that it breached any contractual duties to Dahl's and denies that it is liable under the UTPA. See *Defendant's Answer* (Dkt. 4).

Plaintiffs filed the underlying lawsuit against Dahl's on August 14, 2012. Plaintiffs alleged that they suffered damages as a result of various acts and omissions committed by Dahl's while Plaintiffs were enrolled in Dahl's cosmetology program. Dahl's denied liability for all of Plaintiffs' claims and denied that it committed any of the alleged wrongful conduct. Subsequently, Dahl's consented to judgment in the amount of $4,000,000.

At the time of the events alleged in the underlying lawsuit, Dahl's was insured under a CGL policy issued by Maryland Casualty. Maryland Casualty initially denied Dahl's request for defense of the underlying lawsuit because Plaintiffs did not allege any facts which, if proven, would result in coverage under the policy. However, after being provided with new information potentially triggering coverage under the policy, Maryland Casualty agreed to defend Dahl's under a reservation of rights. This occurred on September 25, 2013.

Plaintiffs allege that Maryland Casualty breached its duty to defend Dahl's, and is therefore obligated to pay the $4,000,000 stipulated judgment. Maryland Casualty denies that it breached a duty to defend Dahl's. If this Court determines that Maryland Casualty did ***not*** breach a duty to defend Dahl's, then it will only be obligated to pay those damages that are actually covered under the policy.

## I.     Maryland Casualty's Motion for Partial Summary Judgment Regarding the Duty to Defend

Whether Maryland Casualty breached a duty to defend Dahl's in the underlying lawsuit is an issue of law to be resolved by the Court. Maryland Casualty filed a Motion for Partial Summary Judgment on this issue on July 1, 2014. See *Maryland Casualty's Motion for Partial Summary Judgment* (Dkt. 10) and *Brief in Support* (Dkt. 11). Plaintiffs requested an extension until September 19, 2014, to file a response. See *Plaintiffs' Motion for Extension* (Dkt. 14) and *Brief in Support* (Dkt. 15). Maryland Casualty opposed Plaintiffs' request because

Plaintiffs already had all of the information needed to respond to Maryland Casualty's motion regarding the duty to defend: (1) the language of the insurance policy, (2) the allegations of the underlying complaint, and (3) facts outside the complaint that were obtained by Maryland Casualty during its coverage investigation. See *Maryland Casualty's Brief in Opposition to Plaintiffs' Motion for Extension* (Dkt. 16).

The Court granted Plaintiffs' request for an extension, noting that "the discovery deadline is not until December 15, 2014," and granting an extension would "not prejudice Maryland Casualty, aside from delaying the Court's resolution of [the duty to defend]." See *Order* (Dkt. 18). Plaintiffs currently have until September 19, 2014, to file a response to Maryland Casualty's motion. *Id.*

## II.   Plaintiffs' Refusal to Respond to Maryland Casualty's Discovery Requests

On June 24, 2014, Maryland Casualty served its First Discovery Requests. See *Defendant Maryland Casualty Company's First Discovery Requests to Plaintiff Breanne Walden*, attached hereto as **Exhibit A**.[1] These requests seek information relevant to establishing whether the insurance policy issued to Dahl's provides coverage for any of Plaintiffs' underlying claims, and the amount of damages for any covered claims. *Id.*

---

[1] Maryland Casualty served each Plaintiff with a separate set of discovery requests. **Exhibit A** is a representative set of the discovery requests that were served on the individual Plaintiffs.

Plaintiffs served responses on July 24, 2014.  See *Plaintiff Breanne Walden's Responses to Defendant's First Discovery Requests*, attached hereto as **Exhibit B**.[2]  Plaintiffs objected to nearly every discovery request, asserting that such information was "not relevant to any of the issues implicated in the present action."  See *Plaintiff Walden's Answers to Interrogatory Nos. 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21, 22, 23,* and *Responses to Request for Production Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, 18, 19, 20, 21, 22, 23.*[3]

Counsel for both parties have corresponded about Plaintiffs' objections and have discussed Maryland Casualty's belief that it needs the discovery and Plaintiff's belief that the discovery is irrelevant.  Plaintiffs assert that the requested discovery is irrelevant based on their opinion that Maryland Casualty breached a duty to defend Dahl's in the underlying lawsuit, an issue that has not yet been resolved by the Court.  If the Court determines that the duty to defend was not breached and that the stipulated judgment is not enforceable, discovery is needed to establish whether any of the underlying claims would be covered under the policy, and the amount of damages for any covered claims.  Since Dahl's denied nearly all of the underlying factual allegations, these factual disputes must be

---

[2] **Exhibit B** is a representative set of the discovery responses served by the individual Plaintiffs.

[3] Plaintiffs also objected to some of the discovery requests based on the attorney-client privilege and/or work product doctrine.  Maryland Casualty does not seek to compel production of privileged information or work product/trial preparation material under Fed. R. Civ. P. 26(b)(5).

resolved by the fact finder before the Court can analyze Maryland Casualty's

indemnity obligations.  Plaintiffs' refusal to respond to Maryland Casualty's

discovery requests, in light of an upcoming deadline for the completion of

discovery, prevents Maryland Casualty from preparing its case for trial and

complying with the remaining deadlines.  Plaintiffs should be compelled to

respond.

## ARGUMENT

A party seeking discovery may move for an order compelling discovery

when a party fails to answer an interrogatory submitted under Rule 33, or fails to

permit inspection or production of documents requested under Rule 34.  Fed. R.

Civ. P. 37(a)(3)(B).  A party may also move for an order compelling discovery

when it disagrees with the objections interposed by the other party and wants to

compel more complete answers.  *Ivins v. Corrections Corp. of America*, 291

F.R.D. 517, 519 (D. Mont. 2013).  If no claim of privilege applies, the production

of evidence can be compelled regarding any matter that is "relevant to any party's

claim or defense…"  Fed. R. Civ. P. 26(b)(1).  The scope of discovery is broad and

essentially encompasses any matter that bears on, or that reasonably could lead to

other information that could bear on, any claim or defense.  *Ivins*, 291 F.R.D. at

522, citing *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 635 (9th

Cir. 2005).

The burden lies on the objecting party to show that a discovery request is improper. *Ivins*, 291 F.R.D. at 519.  The party resisting discovery must show specifically how each discovery request is not relevant.  *Id.*, citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).  It is not for a party to determine, by a unilateral review of documentation, whether information is relevant to the case.  *Kelley v. Billings Clinic*, 2013 WL 1414442 (D. Mont. 2013) (unreported).  A party may not effectively limit discovery based on its own *opinion* that the information sought is irrelevant.  *Smith v. Gorilla, Inc.*, 2010 WL 4286246 (D. Mont. 2010) (unreported).  A party's failure to respond to discovery impedes resolution of the case and prevents the court from adhering to its trial schedule.  *Hyde & Drath v. Baker*, 24 F.3d 1162, 1166 (9th Cir. 1994).

**I.      Discovery is needed to determine whether any of the underlying claims are covered by the policy, and the amount of damages for any covered claims.**

If the Court finds that Maryland Casualty did not breach a duty to defend Dahl's in the underlying lawsuit, the Court must determine whether any of Plaintiffs' claims are covered by the policy, and the amount of damages for covered claims.  The parties initially agreed that discovery would be needed on these issues, as indicated in their Joint Discovery Plan filed on March 6, 2014.  See *Joint Discovery Plan*, 2(e) (Dkt. 7).

Unlike an insurer's duty to defend, which turns on the pleadings and the policy, the duty to indemnify turns on the actual facts and circumstances giving rise to the insured's liability in the underlying suit. Whether there is coverage for any of Plaintiffs' underlying claims against Dahl's depends on whether the facts, "proven, stipulated or otherwise established that actually create the insured's liability" trigger coverage under the terms of the policy. *State Farm Mut. Auto. Ins. Co. v. Freyer*, 2013 MT 301, ¶26. "Established facts" in this context are facts that either undisputed or are initially disputed but subsequently determined by the fact finder. *Id.* at ¶27. When facts necessary to determine the existence of coverage are contested in an underlying action, the insurer cannot be said to have yet breached the duty to indemnify. *Id.*, citing *Skinner v. Allstate Ins. Co.*, 2005 MT 323, ¶¶18-19.

## II. Maryland Casualty is entitled to investigate and discover facts that may be relevant to coverage since those facts were never conclusively resolved in the underlying lawsuit.

If the facts necessary to determine the existence of coverage were never conclusively resolved in the underlying action, those facts can and should be resolved during subsequent coverage litigation. *Troutt v. Colorado Western Ins. Co.*, 246 F.3d 1150 (9th Cir. 2001) (applying Montana law). In *Troutt*, a lawsuit was filed against a tavern for injuries sustained by a patron while splitting wood for the tavern. *Id.* at 1154. The tavern was insured under a liquor liability policy

that provided coverage for injuries arising out of the sale, serving or furnishing of alcohol. *Id.* at 1155. The insurer refused to defend the tavern because the complaint did not allege that the injuries were related to alcohol. *Id.* However, several witnesses testified during their depositions that the tavern supplied free alcohol to patrons who participated in the wood splitting activity and that a large amount of alcohol was consumed before the accident occurred. *Id.* Shortly after trial began, the tavern admitted liability for the accident and the case proceeded to a hearing on damages. *Id.* at 1155. The jury awarded $1.15 million in damages against the tavern.

In a subsequent coverage action, the court held that the insured's admission of liability did <u>not</u> conclusively resolve whether there was coverage for the underlying state court judgment because the critical legal issue had not actually been litigated—whether the tavern's negligent furnishing of alcohol was a contributing proximate cause of the accident. *Id.* at 1155-56. This court held that further evidence was needed to resolve this issue *before* it could rule on coverage. See *Order*, p. 5 (Mar. 31, 1998), attached hereto as **Exhibit C**.

> Because the underlying state action resulted in a consent judgment, and the claims between the parties were not litigated in a manner designed to answer the coverage question, a jury must decide the issue of whether and to what extent the negligent furnishing of alcohol was a contributing factor in the subject incident.
>
>                     \* \* \*
>
> The facts of this case will determine whether the insurance contract…covers Terry Engstrand's injuries. If a jury determines the

> injuries arose out of the negligent sale, service or furnishing of
> alcohol, and that any such negligence was a sole or contributing cause
> of the injuries, then Colorado Western must indemnify Trout d/b/a
> Little Joe's Montana for the damages Engstrand is entitled to by virtue
> of the state court judgment.

*Id.* Four months later, following additional discovery, a bench trial was held to resolve these disputed factual issues. See *Findings of Fact, Conclusions of Law, and Order* (Nov. 12, 1998), attached hereto as **Exhibit D**. After considering the evidence, Judge Molloy determined that the injuries were caused by the tavern's negligent furnishing of alcohol. *Id.* at p. 20. Consequently, the insurer was required to indemnify the tavern to the extent of the loss covered under the policy.[4] In the Ninth Circuit's affirming decision, it noted that the alcohol issue was not litigated on its merits in the state court proceeding, but was properly litigated in the subsequent coverage action. *Troutt*, 246 F.3d at 1158.

Likewise, the underlying lawsuit against Dahl's resulted in a stipulated $4,000,000 judgment **before** any of the underlying factual disputes were resolved by the trier of fact. See *Settlement Agreement, Stipulated Judgment, Covenant Not to Execute, and Assignment*, attached hereto as **Exhibit E**. Dahl's denied virtually all of the factual allegations in the underlying complaint, as well as liability for all of Plaintiffs' claims. The parties' stipulated settlement does not resolve any of these disputed factual allegations, and in fact expressly acknowledges that

---

[4] Although the state trial court awarded $1.15 million in damages, far exceeding policy limits, the insurer was only liable for the extent of the covered loss because it had only breached the duty to indemnify—*not* the duty to defend. See *Order*, pp. 4-5, 20-24.

Plaintiffs' claims were not actually proven.  See *Settlement Agreement*, ¶9 ("*if* *proven*, some or all of Plaintiffs' claims are cognizable under Montana and/or federal law"), and ¶10 ("Defendants acknowledge there is a significant *risk* that Plaintiffs will prevail on their claims at trial").  Both the Montana Supreme Court and the Ninth Circuit have held that consent judgments do not have an issue preclusive effect on future litigants.  *Linder v. Missoula County*, 251 Mont. 292, 297, 824 P.2d 1004, 1007.  "In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated."  *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1159 (9th Cir. 2002), quoting Restatement (Second) of Judgments § 27 cmt. e (1982).  Also see, *In re Berr*, 172 B.R. 299, 306 (9th Cir. 1994) ("[t]he very purpose of a stipulated or consent judgment is to avoid litigation, so the requirement of actual litigation will always be missing").

Since the underlying allegations against Dahl's were never actually litigated on the merits, they must be resolved *before* the Court can rule on coverage.  It is clear under *Troutt* that Maryland Casualty is entitled to investigate and discover any facts that may be relevant to analyzing coverage under the policy.  The Court cannot determine whether there is coverage for any of Plaintiffs' underlying claims, or the reasonable amount of damages for covered claims, until these factual disputes are resolved.

Other jurisdictions also follow this rule.  See, *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589 (5th Cir. 2011) ("the duty to indemnify…is a matter dependent on the facts and circumstances of the alleged injury-causing event, [and] parties may introduce evidence during coverage litigation to establish or refute the duty to indemnify"); *Everett Associates, Inc. v. Transcontinental Ins. Co.*, 159 F.Supp.2d 1196, 1209 (N.D. Ca. 2001) ("when the issues upon which coverage depends are not raised or necessarily adjudicated in the underlying action, then the insurer is free to litigate those issues in the subsequent action and present any defenses not inconsistent with the judgment against its insured"); *State Farm Mut. Auto. Ins. Co. v. Brown*, 767 F. Supp. 1151, 1154-55 (S.D. Fla. 1991) (holding that the insurer was entitled to litigate disputed factual issues that were relevant to coverage in a subsequent action).

## III.   Maryland Casualty's discovery requests seek information that is relevant to analyzing coverage under the insurance policy.

Whether there is insurance coverage for Plaintiffs' claims against Dahl's depends on whether the established facts demonstrate that Plaintiffs suffered "bodily injury" or "property damage" caused by an "occurrence" under Coverage A, and/or "personal and advertising injury" under Coverage B, and that no policy exclusions apply to exclude coverage.

Currently, there is minimal evidence bearing on these issues.  The factual record in the underlying action is bare.  It appears that very little, if any, discovery

was conducted, and no witnesses were deposed.  The only evidence in the underlying action of which Maryland Casualty is aware consists of Plaintiffs' expert disclosure and Plaintiffs' affidavits regarding their alleged physical manifestations of emotional distress suffered as a result of their experience at Dahl's, as well as *allegations* that potentially trigger coverage under Coverage B and/or the Barbers and Beauticians Professional Liability endorsement.  However, there has been no discovery into the veracity of these *allegations*, nor is there evidence indicating the proper measure of damages for these alleged injuries. Maryland Casualty's discovery requests seek information regarding Plaintiffs' medical history and treatment because it is directly relevant to whether they suffered "bodily injury" under Coverage A and/or "consequential bodily injury" under Coverage B, and if so, the amount of compensation to which they are entitled for such injuries.  See *Interrogatory Nos. 13-18*, and *Request for Production Nos. 11-14* (**Exhibit A**).  The discovery requests also seek information regarding other damages suffered by Plaintiffs that may be covered under Coverage B or the Professional Liability endorsement, and the amount of those damages.

Additionally, the opinion of Plaintiffs' expert witness and the assertions contained in Plaintiffs' affidavits *do not conclusively establish* whether there was an "occurrence" under Coverage A, whether Dahl's actions constituted "wrongful

eviction" or "defamation" under Coverage B, or whether Dahl's is liable in providing or failing to provide "barbers and beauticians services" under the Professional Liability endorsement.  There is no testimony from any of the owners or employees of Dahl's regarding *their* alleged acts and omissions, which would certainly be relevant to all of these issues upon which coverage depends, especially since Dahl's denied nearly all of these allegations and these factual disputes were never conclusively resolved by a trier of fact.

Essentially, there is minimal evidence regarding the allegations in the underlying complaint, other than Plaintiffs' own assertions.  While Plaintiffs' *allegations* may potentially trigger coverage under the policy, additional evidence obtained during discovery may refute these allegations and may demonstrate that Dahl's did not commit all of the alleged acts and omissions, or that Plaintiffs did not suffer any covered damages as a result.

In summary, all relevant evidence bearing on these coverage issues must be presented to the trier of fact, who must resolve the factual disputes before the Court rules on coverage.  Maryland Casualty is entitled to obtain this information from Plaintiffs through discovery.  Plaintiffs' Initial Disclosure also indicates that this information is relevant to the issues implicated in the present action.  See *Plaintiffs' Initial Disclosure*, attached hereto as **Exhibit F**.  Plaintiffs' Initial

Disclosure identifies the following witnesses who possess (or may possess) knowledge of relevant facts:

- The Student Plaintiffs

- Andrea Dostie and Amanda Gilbreath (Dahl's instructors, both of whom were Plaintiffs in the underlying lawsuit)

- Douglas Daughenbaugh, Barbara Daughenbaugh, and Philip Belangie (Dahl's owners/members, who were individual Defendants in the underlying lawsuit)

- Family members of Plaintiffs

- Katy Nicholls (Plaintiffs' expert witness, a licensed clinical social worker)

- Great Falls City Police officers who were involved in the eviction of some of the Student Plaintiffs

*Id.*

Maryland Casualty agrees that these witnesses likely have knowledge of relevant facts pertaining to coverage, and intends to depose them once Plaintiffs provide complete discovery responses, as well as additional witnesses identified during the discovery process.  First, Plaintiffs should be compelled to provide complete responses to the following discovery requests (with the exception of information protected by the attorney-client privilege or work product/trial preparation material), which is essentially identical to the information described in Plaintiffs' Initial Disclosure: *Interrogatory Nos. 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13,*

*14, 15, 16, 17, 18, 19, 21, 22, 23,* and *Responses to Request for Production Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, 18, 19, 20, 21, 22, 23.* This information is relevant to establishing whether the policy provides coverage for any of the underlying claims, and the amount of damages for any covered claims. Unless and until this Court determines that the $4,000,000 judgment is enforceable against Maryland Casualty, any information pertaining to coverage is relevant and discoverable.

**IV.  Maryland Casualty should be awarded the reasonable expenses incurred in bringing this motion, including attorney's fees.**

Maryland Casualty also requests that it be awarded the reasonable expenses, including attorney's fees, caused by Plaintiffs' failure to respond to discovery, pursuant to Fed. R. Civ. P. 37(a)(5)(A), or alternatively, Fed. R. Civ. P. 37(d)(3).

**V.  Maryland Casualty requests that the current deadlines in the Scheduling Order be extended or vacated pending resolution of the issue regarding the duty to defend.**

Pursuant to this Court's Scheduling Order, the current discovery deadline is December 15, 2014. See *Order*, p. 2 (Dkt. 9). The Scheduling Order also provides that all motions (other than motions in limine) must be fully briefed by January 30, 2015. *Id.* This means that any dispositive motions regarding coverage/duty to indemnify must be filed by December 26, 2014, at the latest, in order to be fully briefed by January 30, 2015. The Scheduling Order also provides that any party seeking a continuance of the motions deadline or any subsequent deadline must file

a motion with the Court, and that such motions will not be granted absent compelling reasons. *Id.* at p. 3.

The district court possesses broad authority to control discovery. *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002). In general, a pretrial scheduling order may only be modified upon a showing of good cause. *Id.*, citing Fed. R. Civ. P. 16(b). The pretrial schedule may be modified if it cannot reasonably be met despite the diligence of the party seeking the extension. *Zivkovic*, 302 F.3d at 1087.

Maryland Casualty anticipates that there will not be enough time to complete all discovery, including depositions, by the December 15, 2014 deadline. If Maryland Casualty is unable to comply with the current discovery deadline, it will be due solely to Plaintiffs' refusal to respond to its First Discovery Requests and not any lack of diligence on Maryland Casualty's part. Maryland Casualty has made good faith attempts to obtain the requested discovery, with no success, and only brings this motion to compel as a last resort. Maryland Casualty needs Plaintiffs' written discovery responses before it can depose all of the Plaintiffs, Plaintiffs' family members, treating physicians, and any expert witnesses. This cannot reasonably be accomplished by December 15, 2014. Therefore, Maryland Casualty requests that the Court extend the current discovery deadline until at least

four months after the date Plaintiffs are ordered to respond to its First Discovery Requests, and that all remaining deadlines be extended accordingly.

Alternatively, Maryland Casualty requests that the Court vacate the current Scheduling Order and set new deadlines after the Court rules on the pending motion regarding the duty to defend.

## CONCLUSION

Maryland Casualty requests that the Court issue an order compelling Plaintiffs to provide complete responses to its First Discovery Requests, with the exception of information protected by the attorney-client privilege and/or work product/trial preparation material.  Maryland Casualty also requests that it be awarded the reasonable expenses, including attorney's fees, caused by Plaintiffs' failure to respond to its First Discovery Requests, pursuant to Fed. R. Civ. P. 37(a)(5), or alternatively, Fed. R. Civ. P. 37(d).

Maryland Casualty also requests that the Court extend the discovery deadline until at least four months after the date Plaintiffs are ordered to respond to its First Discovery Requests, and that all remaining deadlines be extended accordingly.  Alternatively, Maryland Casualty requests that the Court vacate the current Scheduling Order and set new deadlines after the Court rules on the pending motion regarding the duty to defend.

DATED this 4th day of September, 2014.

**MATOVICH, KELLER, & MURPHY, P.C.**

By:  /s/ Katherine S. Huso
       Carey E. Matovich
       Katherine S. Huso
       Matovich, Keller & Murphy, P.C.

*Attorneys for Defendant Maryland
Casualty Company*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the word length limits of Local Rule 7.1(d)(2), United States District Court for the District of Montana, and contains 3,959 words according to the word count function of Microsoft Office 2010, excluding the caption and certificates of service and compliance.

DATED this 4th day of September, 2014.

**MATOVICH, KELLER & MURPHY P.C.**

By:   /s/ Katherine S. Huso
        Carey E. Matovich
        Katherine S. Huso
        Matovich, Keller & Murphy, P.C.

        *Attorneys for Defendant Maryland*
        *Casualty Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of September, 2014, a copy of the foregoing was served on the following persons by the following means:

| | | | |
|---|---|---|---|
| 1, 2 | CM/ECF | _____ | Fax |
| _____ | Hand Delivery | _____ | E-Mail |
| _____ | Mail | _____ | Overnight Delivery Service |

1.    **Clerk, U.S. District Court**

2.    **Attorneys for Plaintiffs**

    Dennis P. Conner
    Keith D. Marr
    Conner & Marr, PLLC
    P.O. Box 3028
    520 Third Avenue North
    Great Falls, MT  59403-3028

**MATOVICH, KELLER & MURPHY P.C.**

By:    /s/ Katherine S. Huso
       Carey E. Matovich
       Katherine S. Huso
       Matovich, Keller & Murphy, P.C.

       *Attorneys for Defendant Maryland*
       *Casualty Company*