Carey E. Matovich
Katherine S. Huso
Matovich, Keller & Murphy, P.C.
2812 First Avenue North, Suite 225
P.O. Box 1098
Billings, MT 59103-1098
Telephone: (406) 252-5500
Facsimile: (406) 252-4613
Email: cmatovich@mkmfirm.com
         khuso@mkmfirm.com
*Attorneys for Defendant Maryland Casualty Company*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

|  |  |
|---|---|
| BREANNE WALDEN, DANIELLE DESCHENES AZURE, JESSICA BLACKWEASEL, SABRINA REMUS COYNE, BRITTANY DEAN, JENNIFER DEMENT, DANIELLE DUNCAN, JACKIE GREAVU, BETH HAYES, JANA HEILIG, KEALLIE LIETZ, JACKIE MULLENNAX, SARA ONSAGER, ANNA RADFORD, BARBARA SLOAN, MOLLY STILSON, and KYRA TILSON, Individually and as Assignees of DB&D, LLC (d/b/a DAHL'S COLLEGE OF BEAUTY), | Cause No. CV-13-222-M-DLC |
| Plaintiffs, | **DEFENDANT MARYLAND CASUALTY COMPANY'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL DISCOVERY RESPONSES** |
| vs. | |
| MARYLAND CASUALTY COMPANY, and DOES 1-5, inclusive, | |
| Defendants. | |

# INTRODUCTION

This case involves a lawsuit filed against Dahl's College of Beauty ("Dahl's") by Plaintiffs, who were former students at Dahl's. Dahl's confessed judgment for $4,000,000.00 and assigned its rights under the Policy to Plaintiffs, who now seek to collect this amount from Maryland Casualty.

Both parties have filed motions for partial summary judgment regarding the duty to defend, and whether the stipulated judgment is enforceable against Maryland Casualty. If the Court finds that the stipulated judgment is not enforceable, it must determine (1) whether any of Plaintiffs claims are covered under the Policy, and (2) the amount of damages attributable to the covered claims. The duty to indemnify cannot be determined based on *allegations*, but on established, litigated facts. Since the underlying case was resolved by a stipulated judgment, none of the factual issues were actually litigated on the merits. Therefore, the factual issues pertaining to coverage must be litigated in the present action before the Court can ascertain coverage under the Policy.

Maryland Casualty served Plaintiffs with discovery requests in June 2014, seeking information that is directly relevant to the coverage issues. Plaintiffs objected to nearly every single discovery request and refused to provide most of the requested information. Plaintiffs' objections have no merit. Plaintiffs have acknowledged that this information is relevant and discoverable to ascertain

coverage under the Policy.  See *Joint Discovery Plan*, 2(e) (Dkt. 7) (Mar. 6, 2014). Their only basis for opposing Maryland Casualty's motion to compel is their assumption that the Court will rule in their favor and find the stipulated judgment enforceable.

Plaintiffs should be ordered to provide complete responses to the following discovery requests within thirty (30) days of the Court's order: *Defendant Maryland Casualty Company's First Discovery Requests to Plaintiffs, Interrogatory Nos. 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21, 22, 23,* and *Responses to Request for Production Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, 18, 19, 20, 21, 22, 23.*  In addition, Maryland Casualty requests that the Court vacate the current Scheduling Order and set new deadlines be reset after the Court rules on the pending motions regarding the duty to defend.

## ARGUMENT

The scope of discovery is broad and essentially encompasses any matter that bears on, or that reasonably could lead to other information that could bear on, any claim or defense.  *Ivins v. Corrections Corp. of America*, 291 F.R.D. 517, 522 (D. Mont. 2013), citing *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 635 (9th Cir. 2005).  As the objecting party, Plaintiffs have failed to meet their burden of showing specifically why the requested discovery is improper or irrelevant.  *Ivins*, 291 F.R.D. at 519.  Plaintiffs' sole basis for refusing to answer

discovery is their *assumption* that the Court will find the stipulated judgment is enforceable against Maryland Casualty, rendering the requested discovery irrelevant.  This is not a proper basis for refusing to answer discovery.  The Court has not ruled on whether the stipulated judgment is enforceable.  Plaintiffs should be ordered to respond to the discovery requests identified above, since this information is directly relevant to ascertaining coverage under the Policy.

I.     **The requested discovery is relevant to establishing whether there is coverage for any of Plaintiffs' underlying claims against Dahl's, and if so, the measure of damages for covered claims.**

Plaintiffs' sole basis for opposing Maryland Casualty's motion to compel is their *assumption* that the Court will find that the duty to defend was breached and that the stipulated judgment is enforceable.  See *Plaintiffs' Response Brief to Defendant Maryland Casualty's Motion to Compel Discovery Responses* (Dkt. 24) (Sept. 18, 2014), pp. 1-13 (Arguments I, II, III, IV, V).  For example, Plaintiffs brashly assert that "[s]ince Maryland Casualty breached its duty to defend, whether or not there was coverage is irrelevant, as are its discovery requests" (page 10) and "[s]ince it breached its duty, a coverage inquiry and Maryland Casualty's proposed discovery are moot and irrelevant" (page 13).  Since no such determination has been made, it is inappropriate and imprudent for Plaintiffs to refuse to answer discovery because they assume the Court will rule in their favor.

Maryland Casualty acknowledges the possibility that the Court may find that the stipulated judgment is enforceable.  However, if the Court rules otherwise, the requested discovery is directly relevant to ascertaining (1) whether any of the underlying claims are covered under the Policy, and (2) the amount of damages for the covered claims.

It is well-settled in Montana and in other jurisdictions that the duty to defend is distinct from the duty to indemnify.  While the duty to defend turns on the pleadings and the policy, the duty to indemnify turns on the actual facts and circumstances giving rise to the insured's liability in the underlying suit.  Whether there is coverage for any of Plaintiffs' underlying claims against Dahl's depends on whether the facts, "proven, stipulated or otherwise established that actually create the insured's liability" trigger coverage under the terms of the Policy.  *State Farm Mut. Auto. Ins. Co. v. Freyer*, 2013 MT 301, ¶26.  "Established facts" in this context are facts that either undisputed or are initially disputed but subsequently determined by the fact finder.  *Id.* at ¶27.  When facts necessary to determine the existence of coverage are contested in an underlying action, the insurer cannot be said to have yet breached the duty to indemnify.  *Id.*, citing *Skinner v. Allstate Ins. Co.*, 2005 MT 323, ¶¶18-19.  In certain cases, like this one, the facts relevant to coverage may be contested or inconclusive even after resolution of the underlying action.  This often occurs when the underlying action is resolved by a stipulated or

consent judgment, because none of the issues is actually litigated. *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1159 (9th Cir. 2002), quoting Restatement (Second) of Judgments § 27 cmt. e (1982); *In re Berr*, 172 B.R. 299, 306 (9th Cir. 1994) ("[t]he very purpose of a stipulated or consent judgment is to avoid litigation, so the requirement of actual litigation will always be missing"). In these circumstances, those facts must be resolved in a subsequent declaratory judgment action before the court can determine whether an insurer breached its duty to indemnify. *Troutt v. Colorado Western Ins. Co.*, 246 F.3d 1150 (9th Cir. 2001) (applying Montana law); *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589 (5th Cir. 2011) ("the duty to indemnify…is a matter dependent on the facts and circumstances of the alleged injury-causing event, [and] parties may introduce evidence during coverage litigation to establish or refute the duty to indemnify"); *Everett Associates, Inc. v. Transcontinental Ins. Co.*, 159 F.Supp.2d 1196, 1209 (N.D. Ca. 2001) ("when the issues upon which coverage depends are not raised or necessarily adjudicated in the underlying action, then the insurer is free to litigate those issues in the subsequent action and present any defenses not inconsistent with the judgment against its insured"); *State Farm Mut. Auto. Ins. Co. v. Brown*, 767 F. Supp. 1151, 1154-55 (S.D. Fla. 1991) (holding that the insurer was entitled to litigate disputed factual issues that were relevant to coverage in a subsequent action).

In this case, Dahl's denied virtually all of the factual allegations in the underlying Complaints, as well as liability for all of Plaintiffs' claims. The Settlement Agreement does not conclusively establish any facts or resolve any factual disputes, and in fact, expressly acknowledges that Plaintiffs' claims were never actually proven. See *Maryland Casualty's Brief in Support of Motion to Compel* (Dkt. 20) (Sept. 4, 2014), Exhibit E. None of the underlying allegations against Dahl's were actually litigated on the merits, nor was any discovery or testimony obtained to prove or disprove these allegations. Maryland Casualty is entitled to investigate and discover this information in the present action, to the extent it is relevant to analyzing coverage under the Policy. *Troutt*, 246 F.3d at 1158.

To be clear, Maryland Casualty is not attempting to "relitigate" the underlying case. It is simply seeking evidence that may be relevant to analyzing coverage under the Policy so that any factual disputes can be resolved before the Court determines which claims, if any, are covered. Whether there is insurance coverage for Plaintiffs' claims against Dahl's depends on whether the established facts demonstrate that Plaintiffs suffered (1) "bodily injury" or "property damage" caused by an "occurrence" under Coverage A, and/or (2) "personal and advertising injury" under Coverage B, and/or (3) injury covered under the Barbers and Beauticians Professional Liability Endorsement, (4) and that no policy exclusions

apply to exclude coverage. (There may be other applicable provisions, but these appear to be the primary provisions that are relevant to the coverage analysis.) These coverage issues cannot be analyzed until the relevant facts are established by the trier of fact. Only at that point, can coverage be ascertained.

Plaintiffs offer no explanation as to how coverage can be ascertained under the Policy, in the event the Court finds the stipulated judgment is unenforceable. Plaintiffs do not contend that any of the underlying allegations or factual disputes have been conclusively established. They simply dismiss Maryland Casualty's discovery requests as "irrelevant" based on their prediction as to how the Court will rule on the enforceability of the stipulated judgment. Plaintiffs' objections are without merit, and they should be compelled to answer discovery.

## II.    The Court's finding that the underlying settlement was "reasonable" does not clarify what portion of the judgment applies to *covered* claims (if any) versus *non-covered* claims.

Plaintiffs jump to the conclusion that $4,000,000.00 represents the measure of damages if the Court finds there was a duty to indemnify under any part of the Policy. Plaintiffs appear to conclude that because the Court found this amount was reasonable and no evidentiary hearing was required, this must mean their covered claims are worth $4,000,000.00. The Court's finding of reasonableness applied to the stipulated amount to resolve *all* of their claims against Dahl's—including many claims which may not be covered by the Policy. The Court's focus was on Dahl's

liability for the alleged claims.  It was not aware of, or concerned with any of the coverage issues at the time it approved the amount of the stipulated settlement. Thus, a finding of reasonableness is irrelevant since it does not clarify what portion of the $4,000,000.00 is attributable to *covered* claims versus *non-covered* claims.

The information Maryland Casualty requested in discovery is directly relevant to determining proper allocation between covered and non-covered claims, in addition to establishing whether there any coverage exists in the first place (such as information concerning Plaintiffs' tuition and financial aid, medical history and treatment, counseling records and treatment, emotional distress damages, tax returns, employment history, etc.)  If the Court determines that one or more of Plaintiffs' claims are covered under the Policy, while other claims are not, it must then be determined how much the covered claims are worth since Maryland Casualty only has a duty to indemnify Dahl's for covered claims (up to the $4,000,000.00 policy limit).

For example, if the evidence shows that Plaintiffs suffered $100,000.00 in total damages due to Dahl's failure to refund their tuition, this amount would not be covered under Coverage A since it represents purely economic damages, nor would this amount be covered under Coverage B since Plaintiffs did not state a claim for wrongful eviction against Dahl's, as required to trigger coverage for "personal and advertising injury" in Montana. *Union Pacific Ins. Co. v. First*

*Interstate Bancsystems of Montana, Inc.*, 690 F.Supp. 917 (D. Mont. 1988); *Aetna Cas. and Sur. Co. v. First Sec. Bank of Bozeman*, 662 F.Supp. 1126 (D. Mont. 1987).  Nor would damages for lost tuition be covered under the Barbers and Beauticians endorsement.  Thus, $100,000.00 of the $4,000,000.00 judgment would not be attributable to a covered claim.  Evidence is needed to determine the amounts attributable to covered claims versus non-covered claims, if the Court determines that one or more of Plaintiffs' claims are covered under the Policy.

### III.   Maryland Casualty is not collaterally estopped from challenging the judgment.

Plaintiffs' final argument that collateral estoppel bars Maryland Casualty from challenging the judgment is without merit.  This argument has expressly been rejected by the Montana Supreme Court and the Ninth Circuit (applying Montana law).  *Linder v. Missoula County*, 251 Mont. 292, 297, 824 P.2d 1004, 1007 (holding that consent judgments do not have an issue preclusive effect on future litigants); *Troutt*, 246 F.3d at 1159 (inapplicable where the insured's and insurer's interests are not identical with respect to the underlying action); *Amadeo*, 290 F.3d 1152, 1159 (9th Cir. 2002) ("in the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated").

The doctrine of collateral estoppel, also known as issue preclusion, bars a party from relitigating an issue that has already been litigated and determined in a prior suit.  *Troutt*, 246 F.3d at 1157.  The doctrine only applies if the following

elements are met: (1) the identical issue raised has been previously decided in a prior adjudication; (2) a final judgment on the merits was issued in the prior adjudication; and (3) the party against whom the plea is now asserted was a party, or in privity with a party, in the prior adjudication. *Id.*

In determining whether an issue was litigated on the merits, the issue must have been effectively raised in the pleadings or through development of the evidence and argument at trial or on motion, and (2) the losing party had a full and fair opportunity procedurally, substantively, and evidentially to contest the issue in the prior proceeding. *Id.* at 1158. In this case, none of the underlying factual allegations raised in the pleadings were supported by any evidence (at least from what Maryland Casualty can discern since Plaintiffs have refused to answer discovery), or were otherwise litigated on the merits, because "[t]he very purpose of a stipulated or consent judgment is to avoid litigation…" *In re Berr*, 172 B.R. at 306.

None of the elements of collateral estoppel are met in this case. More importantly, Montana and the Ninth Circuit (applying Montana law) have expressly held that this doctrine does not apply to consent judgments because the inherent nature of consent judgment means none of the issues were litigated on the merits. This doctrine has no applicability to Maryland Casualty's right to litigate coverage in this case.

## IV.   Maryland Casualty should be awarded the reasonable expenses incurred in bringing this motion, including attorney's fees.

Maryland Casualty should be awarded the reasonable expenses, including attorney's fees, caused by Plaintiffs' failure to respond to discovery, pursuant to Fed. R. Civ. P. 37(a)(5)(A), or alternatively, Fed. R. Civ. P. 37(d)(3).

## V.   Maryland Casualty requests that the current deadlines in the Scheduling Order be vacated and reset pending resolution of the issue regarding the duty to defend.

Maryland Casualty needs Plaintiffs' written discovery responses before it can move forward with litigating the coverage issues.  At a minimum, Maryland Casualty anticipates deposing all of the Plaintiffs, former members and employees of Dahl's, Plaintiffs' family members, Plaintiffs' treating physicians, and expert witnesses.  This cannot reasonably be accomplished by the current discovery deadline of December 15, 2014.  Therefore, Maryland Casualty respectfully requests that the Court vacate the current Scheduling Order and set new deadlines after the Court rules on the pending motion regarding the duty to defend.

DATED this 2nd day of October, 2014.

**MATOVICH, KELLER, & MURPHY, P.C.**

By:   /s/ Katherine S. Huso
  Carey E. Matovich
  Katherine S. Huso
  Matovich, Keller & Murphy, P.C.
  *Attorneys for Defendant Maryland*
  *Casualty Company*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the word length limits of Local Rule 7.1(d)(2), United States District Court for the District of Montana, and contains 2,599 words according to the word count function of Microsoft Office 2010, excluding the caption and certificates of service and compliance.

DATED this 2nd day of October, 2014.

**MATOVICH, KELLER & MURPHY P.C.**

By:   /s/ Katherine S. Huso
           Carey E. Matovich
           Katherine S. Huso
           Matovich, Keller & Murphy, P.C.

*Attorneys for Defendant Maryland Casualty Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2nd day of October, 2014, a copy of the foregoing was served on the following persons by the following means:

| | | | |
|---|---|---|---|
| 1, 2 | CM/ECF | _____ | Fax |
| _____ | Hand Delivery | _____ | E-Mail |
| _____ | Mail | _____ | Overnight Delivery Service |

1. **Clerk, U.S. District Court**

2. **Attorneys for Plaintiffs**

   Dennis P. Conner
   Keith D. Marr
   Conner & Marr, PLLC
   P.O. Box 3028
   520 Third Avenue North
   Great Falls, MT  59403-3028

**MATOVICH, KELLER & MURPHY P.C.**

By:   /s/ Katherine S. Huso
      Carey E. Matovich
      Katherine S. Huso
      Matovich, Keller & Murphy, P.C.

      *Attorneys for Defendant Maryland*
      *Casualty Company*