IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION



| | |
|---|---|
| BREANNE WALDEN, DANIELLE DESCHENES AZURE, JESSICA BLACKWEASEL, SABRINA REMUS COYNE, BRITTANY DEAN, JENNIFER DEMENT, DANIELLE DUNCAN, JACKIE GREAVU, BETH HAYES, JANA HEILIG, KEALLIE LIETZ, JACKIE MULLENNAX, SARA ONSAGER, ANNA RADFORD, BARBARA SLOAN, MOLLY STILSON, and KYRA TILSON, Individually and as Assignees of DB&D, LLC (d/b/a DAHL'S COLLEGE OF BEAUTY),<br><br>Plaintiffs,<br><br>vs.<br><br>MARYLAND CASUALTY COMPANY, and DOES 1-5, inclusive,<br><br>Defendants. | CV 13–222–M–DLC<br><br>ORDER |

Before the Court is Defendant's Motion for Summary Judgment (Doc. 78.)

For the reasons explained below, the Court denies Defendant's motion.

**PROCEDURAL AND FACTUAL BACKGROUND**

On October 7, 2015, the Court granted Defendant Maryland Casualty

Company's ("Maryland") motion for summary judgment, and denied all other

pending motions as moot. The Ninth Circuit reversed and mandate was issued on July 7, 2017. The parties submitted a joint status report on August 18, 2017, pursuant to the Court's request, outlining the motions that are now ripe and need to be resolved. Defendant's July 31, 2015 Motion for Summary Judgment is one of the ripe and pending motions.

Because the parties are familiar with the facts of this case they will only be recited as necessary to understand the Court's Order.

## LEGAL STANDARD

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248. In ruling on a motion for summary judgment, a court must view the evidence "in the light most favorable to the opposing part." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). "[T]he evidence of the nonmovant is to be believed, and

all justifiable inferences are to be drawn in his favor." *Id.* at 1863 (quoting *Anderson*, 477 U.S. at 255). "If the moving party has the burden of proof at trial, that party must carry its initial burden at summary judgment by presenting affirmative evidence as to the essential elements of its case such that no reasonable jury could find for the non-moving party." *Alliance for the Wild Rockies v. United States Dept. of Agric.*, 938 F. Supp. 2d 1034, 1039 (D. Mont. 2013), *rev'd in part on other grounds*, 772 F.3d 592 (9th Cir. 2014).

## ANALYSIS

Maryland argues that summary judgment is proper because Plaintiffs Brittany Houston ("Houston") and Anna Radford ("Radford") have failed to prove they suffered physical manifestations from their emotional distress, which is a prerequisite to finding coverage under Maryland's insurance policy. Since Maryland filed its motion, Plaintiffs have supplemented the record with affidavits claiming physical manifestations of their emotional distress. Maryland argues the new statements are sham affidavits and the Court should strike them and award summary judgment to Maryland.

Plaintiffs argue that summary judgment is not appropriate because the affidavits raise an issue of material fact regarding whether they suffered physical manifestations of emotional distress. Additionally, their testimony is

supplemented with the affidavit of Katy Nicholls ("Nicholls"), a LCSW who diagnosed both Plaintiffs and concluded that they both suffered from physical manifestations due to their emotional distress.

Prior to reaching the merits of Maryland's summary judgment motion, the Court must first address whether the affidavits are a "sham."

## I. Sham Affidavits

The general rule in the Ninth Circuit is that a party cannot create an issue of material fact to preclude summary judgment by raising additional facts that are inconsistent to their prior sworn testimony. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* (quoting *Perma Research and Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)).

However, this rule "should be applied with caution." *Van Asdale v. International Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009). The "sham affidavit" rule is contrary to the court's general role in deciding a summary judgment motion, which is not to make "credibility determinations or weigh

-4-

conflicting evidence." *Id.* Thus, the Ninth Circuit has limited the rule to cases where (1) the affidavit is "actually a sham" and (2) the inconsistencies are "clear and unambiguous." *Id.* Courts analyzing the rule look to whether subsequent testimony "flatly contradicts" previous testimony, or whether the inconsistencies are attributable to confusion. *Van Asdale*, 577 F.3d at 999; *Kennedy*, 952 F.2d at 267. "The nonmoving party is not precluded from elaborating upon, explaining or clarifying prior testimony." *Van Asdale*, 577 F.3d at 999 (quoting *Messick v. Horizon Indus.*, 577 F.3d 989, 998–99 (9th Cir. 1995).

There is nothing in Houston's initial deposition that "flatly contradicts" her later affidavit. In her initial testimony, Houston described that she "couldn't handle" the stress of her experience at Dahl's. (Doc. 81-3 at 11.) Although she indicated that she did not experience difficulty sleeping, have difficulty eating, or experience stomach problems, she stated she "did not know" whether she had experienced nausea, tension or anxiety. (*Id.*) None of these statements "flatly contradict" her later testimony that she experienced panic attacks with shaking in her hands, arms and perfuse perspiration. (Doc. 85-2 at 4.) Further, her testimony at deposition in response to questions regarding the nature of her emotional distress reveals possible confusion:

Mr. Connor: And so how would that stress manifest itself?

> Ms. Houston: Like with me?
>
> Mr. Connor: Yeah, with you, how would it manifest itself?
>
> Ms. Houston: I bit my tongue up until when I had my little blowout; I guess I couldn't handle it.
> . . .
>
> Mr. Connor: When you get tense, how do you feel that tension and anxiety?
>
> Ms. Houston: I don't know, I kind of over think things.
> . . .
>
> Mr. Connor: And when you really got low, what did these real lows feel like?
>
> Ms. Houston: Like coming in the room myself, and ignoring everybody —

(Doc. 81-3 at 11–12.)

It is not clear from the transcript that Houston understood the question to mean "what did these real lows [physically] feel like" or "how would that stress [physically] manifest itself?" (*Id.*) In response, Houston provides three descriptions of her mental and emotional condition: (1) "I bit my tongue up until I had my [] blowout," (2) "I couldn't handle it," and (3) it felt like "coming in the room . . . and ignoring everybody." (*Id.*) Houston's lack of any physical descriptors for her emotional state may reflect the non-existence of any physical symptoms, or it may indicate her confusion to the question. For these reasons, the

Court cannot conclude that the Houston's second affidavit is "actually a sham," or that the inconsistencies are "clear and unambiguous."

Similarly, Radford's testimony is also void of any "fla[t] contradictions." *Id.* In her initial testimony she described that the stress of her experience at Dahl's built over time, that she was often angry to the point of tears, and that she finally reached her breaking point. (Doc. 81-4 at 10–11.) In her later affidavit she provides more detail. Radford describes that the stress caused her to experience panic attacks, during which her breathing became short and shallow, "like [she] was hyperventilating." (Doc. 85-1 at 4.) She experienced a pounding heart, aggravated asthma, migraines, insomnia and changes in appetite. (*Id.* at 6–7.) Because Radford's subsequent affidavit does not conflict with her earlier testimony, but rather "elaborates upon, explain[s] or clarif[ies] prior testimony" it is not a sham affidavit. *Van Asdale*, 577 F.3d at 999 (quoting *Messick v. Horizon Indus.*, 577 F.3d 989, 998–99 (9th Cir. 1995)).

Accordingly, the Court will consider both affidavits in analyzing Maryland's summary judgment motion.

## II. Maryland's Motion for Summary Judgment

Maryland claims it is entitled to summary judgment because the only symptoms raised by the Plaintiffs are panic attacks, and Montana law has not

recognized panic or its associated symptoms as physical manifestation of emotional distress. (Doc. 92 at 2.) Thus, there is no issue of fact and summary judgment should be decided in its favor. Plaintiffs contend that Montana law recognizes "bodily injury" to include a mental or psychological injury accompanied by physical manifestations, including symptoms associated with panic. *Allstate Ins. Co. v. Wagner-Ellsworth*, 188 P.3d 1042, 1051–1052 (Mont. 2008). Because the affidavits reflect physical symptoms including difficulty breathing, a pounding heart, and shaking limbs, summary judgment is not appropriate. (Doc. 84 at 4–5, 8.) The Court agrees that Plaintiffs have raised a question of fact.

Despite Maryland's contention that Montana law does not recognize panic attacks as a form of "bodily injury," this Court can find no case in direct support of that claim. Rather, the law provides that each claim of mental and psychological "bodily injury" is a highly fact-intensive inquiry that requires careful individual analysis. *Tucker v. Farmers Ins. Exch.*, 215 P.3d 1, 6 (Mont. 2009). The Montana Supreme Court first recognized emotional distress as a "bodily injury" to find insurance coverage in *Allstate Ins. Co. v. Wagner-Ellsworth*. The Court concluded that "bodily injury" "could mean a strictly physical injury or could also include physical manifestations arising from a mental injury or sickness." *Allstate Ins.*

*Co.*, 188 P.3d at 1051. Recognizing the difficulty in distinguishing between a purely mental injury and a mental injury supported by physical symptoms, the Court provided anecdotal guidance of the types of symptoms that would likely qualify for coverage. *Allstate Ins. Co.*, 188 P.3d at 1051. The Court indicated that a dry throat, rise in body temperature, and stomach knots could be physical symptoms, as could high blood pressure on its own. *Id.* at 1052. Physical symptoms such as weight loss, sleep loss, headaches, stomach and muscle pains were likely enough. *Id.* The Court contrasted these with three examples of symptoms that likely did not constitute a "bodily injury": (1) humiliation, mental anguish, and mental suffering; (2) loss of sleep, loss of self-esteem, humiliation and irritability; and (3) crying, shaking hands and sleep difficulties. *Id.*

In *Allstate*, the mother of a young child struck by a car reported increased levels of stress, migraines, a rapid heart rate when she heard sirens, physical pain and depression. *Id.* at 1044. While her son only manifested signs of having "withdrawn." *Id.* On these facts, the Montana Supreme Court reversed the district court's grant of summary judgment. *Id.* at 1052. Likewise, in *Tucker* the Court found that a rapid heart rate and increased perspiration were sufficient indicators of bodily injury, in context with the testimony from numerous sources that the plaintiff suffered a dramatic personality change. *Tucker*, 215 P.3d at 6. The

mother of an 11-year old killed in a car accident suffered from PTSD, depression, and obsession with her daughter's death. *Id.* Her relationship with her husband deteriorated, she spent long hours at work and at her daughter's grave site and her symptoms persisted for years. *Id.* These examples provide a range of physical responses to emotional distress, and serve to illustrate that there is no set formula. Once a plaintiff raises mental suffering accompanied by physical symptoms, the existence of the injury becomes a question of fact.

Houston alleges that as a result of her experience at Dahl's she became depressed, suffered from panic attacks that made her hands and arms shake, and that she was not able to mentally or physically function normally. (Doc. 85-2 at 4.) Radford alleges that she suffered panic attacks which made it difficult to breathe. (Doc. 85-1 at 4.) These attacks exacerbated her asthma and required additional medication. (*Id.*) Additionally, she suffered from repeated bouts of insomnia and loss of appetite. (Doc. 85-1 at 5.) The Court finds these symptoms are sufficient to raise an issue of fact, concerning whether Plaintiffs have physical manifestations of emotional distress. By comparison, in *Allstate*, the Montana Supreme Court found that an allegation of being withdrawn was enough to preclude summary judgment in that particular instance. *Allstate Ins. Co.*, 188 P.3d at 1044, 1052.

Further, the Plaintiffs' claims are bolstered by the factual support provided in Nicholls' affidavit. The Court has instructed that "[w]hen an emotional distress claim is not supported factually, the insurer can and should move to dismiss the meritless claim." *Id.* at 1052. In Nicholls' initial May 28, 2015 report she examined the Plaintiffs' records in order to diagnose their emotional distress and concluded that "all of the Plaintiffs suffered physical manifestations of emotional distress as a result of what they went through at Dahl's." (Doc. 85-4 at 2–4.) Nicholls' spoke with Houston and Radford again in August of 2015, and reaffirmed her opinion. *Id.*

Taking this evidence in the light most favorable to the Plaintiffs, and considering the Montana Supreme Court's instruction that each claim be determined by a fact intensive, case by case inquiry, this Court concludes there is an issue of material fact as to whether Plaintiffs Houston and Radford suffered physical manifestations of their emotional distress.

Accordingly, IT IS ORDERED that Defendants' Motion for Summary Judgment (Doc. 78) is DENIED.

DATED this 29th day of November, 2017.

Dana L. Christensen, Chief Judge
United States District Court

-11-