IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION



**FILED**

DEC 04 2017

Clerk, U.S District Court
District Of Montana
Missoula

| | |
|---|---|
| BREANNE WALDEN, DANIELLE DESCHENES AZURE, JESSICA BLACKWEASEL, SABRINA REMUS COYNE, BRITTANY DEAN, JENNIFER DEMENT, DANIELLE DUNCAN, JACKIE GREAVU, BETH HAYES, JANA HEILIG, KEALLIE LIETZ, JACKIE MULLENNAX, SARA ONSAGER, ANNA RADFORD, BARBARA SLOAN, MOLLY STILSON, and KYRA TILSON, Individually and as Assignees of DB&D, LLC (d/b/a DAHL'S COLLEGE OF BEAUTY),<br><br>Plaintiffs,<br><br>vs.<br><br>MARYLAND CASUALTY COMPANY, and DOES 1-5, inclusive,<br><br>Defendants. | CV 13–222–M–DLC<br><br><br>ORDER |

Before the Court are Defendant's Motions in Limine (Doc. 88). At the outset, it is important to note that the Court's overriding goal in this case is to facilitate efficient presentation of the relevant evidence and, to the extent possible, preclude irrelevant and extraneous matters at the time of trial. With this goal in mind, and for the reasons briefly explained below, the Court grants the motion in

-1-

part, denies the motion in part, and reserves ruling in part.

## PROCEDURAL AND FACTUAL BACKGROUND

Following a Mandate of the Ninth Circuit Court of Appeals in this case on July 7, 2017, this matter is now back before this Court. On October 7, 2015, this Court granted Defendant Maryland Casualty Company's ("Maryland") motion for summary judgment, and denied all other pending motions as moot. The Ninth Circuit reversed this Court's ruling. The parties submitted a joint status report on August 18, 2017, pursuant to the Court's request, outlining the motions that are now ripe and need to be resolved.

On August 28, 2015, Defendants filed their motions in limine including:

- Motion in Limine 1 – Excluding any reference to the consent judgment in the underlying case

- Motion in Limine 2 – Excluding evidence of or testimony regarding Maryland's alleged bad faith, duty to defend, duty to indemnify, or that insurer did not pay Plaintiffs' claims

- Motion in Limine 3 – Excluding or limiting the testimony of Plaintiffs' expert Katy Nicholls

- Motion in Limine 4 – Excluding or limiting the testimony of Plaintiffs' expert Dr. Barak Gaster

- Motion in Limine 5 – Excluding any unexpressed expert opinions by Dr. Gaster or Nicholls, including, but not limited to, any reference to or discussion of the article concerning the effect of stress on asthma identified by Dr. Gaster during his

deposition

- Motion in Limine 6 – Excluding any argument that Dahl's was negligent

- Motion in Limine 7 – Excluding evidence or testimony regarding the amount of the Plaintiffs' tuition payments and/or student loans

- Motion in Limine 8 – Excluding any reference to or testimony about Dahl's alleged failure to keep proper records

- Motion in Limine 9 – Excluding any reference to or testimony about alleged inadequate instruction by Dahl's or Ms. Heikkila

The Court will address the merits of each motion below.

## DISCUSSION

A motion in limine is used to preclude prejudicial or objectionable evidence before it is presented to the jury. The decision on a motion in limine is consigned to the district court's discretion—including the decision of whether to rule before trial at all. *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999). A motion in limine "should not be used to resolve factual disputes or weigh evidence." *BNSF Ry. v. Quad City Testing Laboratory, Inc.*, 2010 WL 4337827, at *1 (D. Mont. Oct. 26, 2010). Evidence shall be excluded in limine only when it is shown that the evidence is "inadmissible on all potential grounds." *See, e.g.*, *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N. D. Ohio

2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *BNSF*, 2010 WL 4337827 at \*1. "This is because although rulings on motions in limine may save time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Id.* Rulings on motions in limine are provisional and the trial judge may always change his mind during the course of trial. *Luce v. United States*, 469 U.S. 38, 41 (1984).

## I. Motion in Limine 1 – Excluding any reference to the consent judgment in the underlying case

Maryland contends that the underlying stipulated judgment is no longer of any consequence and is irrelevant to the issues to be decided in this case at trial. (Doc. 91 at 7 (citing to *Hardesty v. Barcus*, 2012 WL 5906797, at \*2 (D. Mont. Nov. 26, 2012)). Plaintiffs do not oppose this motion. (Doc. 93 at 7.) Thus, Maryland's Motion in Limine 1 is granted.

## II. Motion in Limine 2 – Excluding evidence of or testimony regarding Maryland's alleged bad faith, duty to defend, duty to indemnify, or that insurer did not pay Plaintiffs' claims

Maryland also moves to preclude the admission of evidence related to Plaintiffs' foreclosed breach of contract and UTPA claims. (Doc. 91 at 7–8.)

-4-

Plaintiffs do not oppose the motion as it relates to Mayland's alleged violation of the UPTA, breach of the duty to defend, and breach of the duty to indemnify. (Doc. 93 at 7.) However, Plaintiffs do assert that evidence related to the "non-payment of Plaintiffs' claims" is relevant, and claim that Maryland failed to present any argument or authority to support its proposition that this evidence should be excluded. In its reply brief, Maryland argues that such evidence is irrelevant in light of the Court's ruling that Maryland did not breach its duty to indemnify and did not commit bad faith. (Doc. 95 at 2.) The Court finds that any evidence of non-payment of Plaintiffs' claims by Dahl's' insurer is irrelevant and prejudicial. Therefore, Maryland's Motion in Limine 2 is granted.

## III. Motion in Limine 3 and 4 – Excluding or limiting the testimony of Plaintiffs' experts Katy Nicholls and Barak Gaster

Federal Rule of Evidence 702 governs the introduction of expert opinion testimony. Plainly stated, "[t]estimony is admissible under Rule 702, if the subject matter at issue is beyond the common knowledge of the average layman, the witness has sufficient expertise, and the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion." *United States v. Winters*, 729 F.2d 602, 605 (9th Cir. 1984). Under Rule 702, the district judge must perform a gatekeeping function to ensure that the evidence is "not only

-5-

relevant, but reliable." *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 589 (1993). The test of reliability is a "flexible" one, and *Daubert*'s list of specific factors neither necessarily nor solely apply to all experts or in every case. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). As a result, Rule 702 leaves a trial judge "considerable leeway in deciding . . . how to go about determining whether particular expert testimony is reliable,"and whether a *Daubert* hearing is even required. *Id.* at 152; *see also United States v. Alatorre*, 222 F.3d 1098, 1100–02 (9th Cir. 2000) (finding that trial courts are not compelled to conduct pretrial hearings in order to discharge the gatekeeping function under *Daubert* as to expert testimony). "Expert opinions that are fundamentally unsupported and speculative will not serve the purpose for which they are offered, namely to assist the jury in reaching a sound verdict." *Eggar v. Burlington N. R. Co.*, No. CV 89–159–BLG–JFB, 1991 WL 315487, at *2 (D. Mont. Dec. 18, 1991), *aff'd sub nom. Claar v. Burlington N. R. Co.*, 29 F.3d 499 (9th Cir. 1994).

Consequently, in the instant case, the Court must evaluate the expert testimony proffered by the Plaintiffs according to the guidelines provided by Federal Rule of Evidence 702 and related case law to determine whether it meets the requirements for admissible expert testimony.

### a.    Dr. Barak Gaster

Maryland seeks to exclude or limit the testimony of Plaintiffs' retained expert, Dr. Barak Gaster, because he failed to review or rely on any of Plaintiffs' medical records prior to forming his opinion on causation and, instead, offered an opinion on the general physical manifestations that may arise when one is subject to emotional distress. (Doc. 91 at 12–13, 15.) Plaintiffs contend that they retained Dr. Gaster to (1) explain the medical/physiological correlation between emotional distress and physical manifestations of the same, and (2) render a medical opinion about causation relative to Plaintiffs' physical manifestations of emotional distress and exposures at Dahl's. (Doc. 93 at 9–10.) Plaintiffs argue that Dr. Gaster is a qualified expert based on his background in medicine, teaching positions, and reputation. (*Id.* at 10.) Further, they claim that Dr. Gaster: (1) reviewed transcribed statements given by each of the Plaintiffs; (2) reviewed sworn affidavits signed by each of the Plaintiffs; (3) reviewed Plaintiffs' verified responses to Maryland's discovery requests, reviewed the report of Katy Nicholls, Licensed Clinical Social Worker ("LCSW") (including the catalogue of symptoms created by Nicholls); (4) talked to Nicholls about her findings and professional opinions; (5) skimmed Plaintiffs' voluminous medical records; and (6) reviewed authoritative medical literature relevant to the medical allegations in this case. (*Id.* at 11.)

Moreover, Plaintiffs assert that Dr. Gaster is not required to tediously comb through thousands of pages of medical records and rule out all other potential causes of similar symptoms. (*Id.* at 13.) Plaintiffs also argue that Maryland's reliance on *Eggar v. Burlington N. R.R. Co.* is misplaced, because Dr. Gaster never rejected the notion that Plaintiffs have underlying medical conditions, but rather concluded that the environment Plaintiffs endured at Dahl's independently caused physical manifestations of emotional distress. (Doc. 15–16.) Plaintiffs instead rely on *Speaks v. Mazda Motor Corp.,* 118 F. Supp. 3d 1212, 1219 (D. Mont. 2015), for the proposition that the admissibility of expert testimony does not depend on the expert personally performing testing but that the expert need only rely on peer-reviewed studies and literature as support for his opinions. Therefore, even though Dr. Gaster never met with each of the Plaintiffs, his opinions are based on Nicholls' reports—who personally met with the individual Plantiffs–and his review of those reports combined with his expertise is sufficient for Dr. Gaster to testify to causation.

In *Eggar*, the plaintiffs sued their employer alleging that they were exposed to a host of chemicals during their employment and suffered multiple injures as a result. 1991 WL 315487, at *1. To establish causation, plaintiffs submitted affidavits of Dr. Hines and Dr. Nelson. *Id.* at *2. United States District Court

Judge Battin found that the experts' affidavits "simply listed chemicals and injuries with cursory conclusions as to causation." *Id.* at \*5. The court also held that '[a]lthough nearly 400 medical conditions were discussed in the affidavits, more than half of the medical conditions diagnosed in the plaintiffs were not even mentioned by the doctors in the [reports]." *Id.* at \*7. Further, the court questioned the expert's reliability because the doctors had no expertise in the field of chronic chemical exposure and relied on authorities in their expert disclosures of which they had no knowledge. *Id.* Thus, "[b]ecause the doctors did not set forth their reasoning processes or specifically state the medical and scientific bases for their opinions as to each plaintiff," Judge Battin found "nothing more substantive than that the plaintiffs were exposed to a multitude of chemicals and thereafter suffered from a multitude of ailments." *Id.* at \*5.

In reading the entirety of Dr. Gaster's report, the Court finds that he did not examine any of the Plaintiffs, and instead relied on their 17 statements, affidavits, discovery responses and the opinion report of Plaintiffs' other expert, Nicholls. Dr. Gaster was provided with each Plaintiffs' medical record, but did not review them. Furthermore, he concedes in his deposition that he would typically obtain a medical history and examine a patient before rendering a diagnosis and providing treatment. (Doc. 91-3 at 51–52.) He also concedes that he reviewed the Plaintiffs'

medical records for "maybe about an hour" and "skipped through each file in a somewhat rapid way," but that he did not consider any specific medical records in forming his opinions. (*Id.* at 21, 25.) Dr. Gaster also testified that he could not recollect any Plaintiff's individual medical record with sufficient detail to be able to respond to specific questions about those records. (*Id.* at 23.) He also did not rule out alterative causes. In other words, he did not engage in the usual diagnostic process that a medical doctor would employ before diagnosing a patient, and determining the cause of a particular medical condition.

The issue with Dr. Gaster's report and opinions is not the issue with the expert reports in *Speaks*, where the undersigned merely found that an expert is not required to personally perform testing. *Speaks*, 118 F. Supp. 3d at 1219. Here, the issue regarding Dr. Gaster's report is more akin to the issues found in *Eggar*, where the experts did not review individual Plaintiffs' medical histories. Therefore, the Court finds that Dr. Gaster is precluded from offering opinions regarding the individual Plaintiffs, specifically, that they "suffered the physical manifestations of emotional distress as a result of their experiences" at Dahl's. (Doc. 91-1 at 2.)

However, Dr. Gaster is qualified to offer the general opinion found at the bottom of his report that "emotional distress is a well-recognized cause of a wide

range of physical symptoms that [he sees] regularly in [his] clinic practice" which can lead "to a series of physical responses." (Id.) The Court will allow him to testify as to the kinds of phsyicial manifestations that he typically sees in his experience from emotional distress. Maryland is free to cross-examine on these general opinions.

Thus, the Court grants Maryland's Motion in Limine 3 in part and denies in part. Dr. Gaster will not be allowed to offer any opinions regarding individual Plaintiffs, but will be allowed to offer general opinions regarding the physical manifestations of emotional distress as described above.

### b.   Katy Nicholls, LCSW

Aside from alleging that Nicholls is not qualified to testify because she is a LCSW and not a medical doctor, Maryland objects to her testimony on two other grounds: (1) that her medical opinions were formed without the proper basis because she did not consider the Plaintiffs' medical histories; and (2) that her testimony regarding Plaintiffs' claims are "common responses that meet the criteria for physical manifestations of emotional distress" invades the province of the jury because it is nothing more than the expression of a legal conclusion. (Doc. 91 at 22.)

Plaintiffs assert that Nicholls has the requisite knowledge, training and

experience to qualify as an expert witness under Rule 702, because she has a masters degree in Social Work from the University of Denver and has been a practicing psychotherapist since 2008, in which time she has seen hundreds of clients. During the course of her interaction with clients, Nicholls conducts diagnostic evaluations, evaluates the clients' emotional stability and mental health needs, and formulates treatment plans to address patients' mental health needs. (Doc. 93 at 18–19.) Further, Plaintiffs assert that Nicholls' opinions regarding Plaintiffs' physical symptoms were formed after (1) reviewing the transcribed statements of each Plaintiff, (2) reviewing Plaintiffs responses to Maryland's discovery requests, (3) reviewing Dr. Gaster's report, (4) speaking with Dr. Gaster regarding his medical opinions, (5) reviewing the authoritative medical literature pertaining to the topic and (6) personally interviewing each Plaintiff for more than an hour. (Doc. 93 at 19.) Based upon this information, Nicholls formed her opinion, to a reasonable degree of medical certainty, that each Plaintiff suffered from physical manifestations of emotional distress as a result of their experiences and exposure at Dahl's. (*Id.*; Doc. 91-2)

Numerous federal courts have permitted licensed clinical social workers and other mental health counselors to testify as experts on issues of mental health. *See United States v. Garcia*, 7 F.3d 885, 889–90 (9th Cir. 1993) (concluding that the

district court did not abuse its discretion by accepting expert testimony from a mental health specialist holding a masters degree in psychology and with 8 years of experience counseling for the Navajo tribe); *see also United States v. Charley*, 189 F.3d 1251, 1268–69 (10th Cir. 1999); *Lodge v. Doe*, 2012 WL 3644745 (E.D. La. 2012); Am. Jur. 3d *Proof of Facts* § 189 (1994) ("with appropriate experience and credentials, [clinical social workers] can be qualified to give mental health opinions."). To be qualified to testify regarding causation, the Plaintiffs must establish that Nicholls has the requisite professional training and experience.

At the outset, the Court finds that a knowledgeable expert is qualified to offer a medical opinion as a matter of law, regardless of whether that person is a LCSW and not an MD. Having examined Nicholls' expert report, the Court finds many of the same problems associated with Dr. Gaster's opinions, namely that she does not appear to have considered alternative causes for the Plaintiffs' mental health conditions and associated physical symptoms. Yet, her testimony is bolstered by the fact that she actually interviewed the individual Plaintiffs. (Docs. 91-2 at 6; 93-4.) Thus, assuming an adequate foundation can be laid, Nicholls will be allowed to offer testimony about whether individual Plaintiffs (1) experienced physical manifestations that were (2) attributable to their experience at Dahl's.

However, Nicholls will not be allowed to testify as to the legal conclusion

that the Plaintiffs' physical manifestations of emotional distress constitute a

"bodily injury." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051,

1058 (9th Cir. 2008) (finding that "an expert witness cannot give an opinion as to

her legal conclusion, i.e., an opinion on an ultimate issue of law." ). Maryland's

objections to Nicholls' testimony go largely to the weight of her opinions, which

can be developed through cross-examination.

Accordingly, the Court denies Maryland's Motion in Limine 4, subject to

Plaintiffs establishing the requisite foundation described above.

## IV. Motion in Limine 5 – Excluding any unexpressed expert opinions by Dr. Gaster or Nicholls, including, but not limited to, any reference to or discussion of the article concerning the effect of stress on asthma identified by Dr. Gaster during his deposition

Maryland next argues that any opinion by Dr. Gaster concerning the effect

of stress on asthma is untimely and must be barred. Dr. Gaster made no mention

of the effect of stress on asthma in his expert disclosure report and the report was

not supplemented prior to his deposition. Thus, Maryland contends that his

mention of an article on the subject during deposition was improper. (Doc. 91 at

26–28.)

Plaintiffs argue that Dr. Gaster's testimony regarding the effects of stress on

asthma was submitted in the expert report because the expert report referred to an

authoritative article on stress and disorders of the stress system, which notes an association between stress, panic attacks, and asthma. Thus, the article mentioned during Dr. Gastor's deposition simply provided additional support for his previously disclosed opinions on the issue. (Doc. 93 at 23–24.)

The Court will reserve its ruling until trial on this issue. However, the Court cautions that it will not allow any expert opinions at trial that are not contained within the experts' written reports (Docs. 91-1; 91-2), pursuant to Fed. R. Civ. P. 26(a)(2)(B). Specifically, as it relates to Dr. Gaster, any opinion regarding the condition of a specific Plaintiff will not be allowed.[1] More specifically, he will not be allowed to testify that Radford or any other Plaintiffs experienced exacerbated asthma as a result of the stress of their experiences at Dahl's. However, to the extent that Dr. Gaster identifies a general opinion that exacerbation of asthma symptoms can be a physical manifestation of stress, it will be allowed.

## VI. Motion in Limine 6 – Excluding any argument that Dahl's was negligent

Maryland contends that all of the behavior alleged in Plaintiffs' underlying action against Dahl's was intentional in nature and there was no claim of

---

[1] See the Court's ruling in Section III above.

-15-

negligence asserted against Dahl's. Therefore, Plaintiffs should be prevented from arguing, suggesting, or presenting evidence regarding any alleged negligence by Dahl's. (Doc. 91 at 28–29.) Further, in order to establish negligence, Plaintiffs would need to establish the standard of care for educational professionals in the cosmetology industry, which they have failed to provide. (*Id.* at 29.) Plaintiffs assert that their claims against Dahl's were grounded in negligence, including, but not limited to, wrongful expulsion, failure to provide competent instruction, failure to provide competent curriculum, failure to follow internal procedures, failure to maintain accurate records, failure to remedy the offensive environment, and failure to provide progressive discipline. (Doc. 93 at 24.) Plaintiffs contend that these claims do not turn on facts peculiarly within the knowledge of professional experts and that a jury is more than capable of adjudicating these negligence claims under the reasonably prudent person standard. (*Id.* at 25–26.) Thus, Plaintiffs contend an expert is not required on this subject.

The Court has scoured Plaintiffs' amended complaint filed in the underlying case and there are no claims of negligence alleged in that pleading, such as claims for negligent hiring, supervision, or retention of an instructor.[2] Plaintiffs' counsel

---

[2] Maryland contends that the only remaining claims are those for bodily injury damages, which are the only claims for which there is coverage. (Doc. 106 at 3.) Plaintiffs claim they have surviving claims for violation of the Montana Unfair Trade Practices and Consumer

are very experienced, extremely competent, and are fully aware of the tort of

negligence and what is required to plead such a claim. Despite this, they did not

do so in the underlying complaint against Dahl's. (*See* Doc. 12-8.) Thus,

Maryland's motion is well taken.

However, in the subject complaint against Maryland, Plaintiffs allege a

number of factual events they contend caused them to suffer injuries allegedly

---

Protection Act and those "grounded in" negligence, based on the amended complaint filed
against Dahl's in the underlying action. (*Id.*) The Court disagrees with Plaintiffs.

When this Court granted summary judgment to Maryland, it did so having concluded that
"there [was] no material factual dispute that [] Dahl's conduct was intentional [and] volitional.
(Doc. 97 at 5.) Based upon this finding, the Court concluded that there was no liability under
Maryland's policy because the Plaintiffs' had alleged injuries stemming from purposeful acts
which had unintended and unexpected consequences. (*Id.*) When the Ninth Circuit reversed this
Court's ruling, it did so on the narrow issue of coverage for bodily injuries that were the
unintended or unexpected consequences of intentional acts, in light of subsequent Montana
Supreme Court case law. *Walden v. Maryland Casualty Co.*, 692 Fed. Appx. 476, 477 (9th Cir.
2017.) The Ninth Circuit found that an "occurrence" is excluded from coverage only if there is
an intentional act, and "the consequences or resulting harm stemming from the act was intended
or expected." *Id.* (citing *Employers Mutual Casualty Co. v. Fisher Builders, Inc.*, 371 P.3d 375
(Mont. 2016)). Thus, because the intentional acts of Dahl's resulted in unintentional, unexpected
consequences, there is coverage under the policy. The Ninth Circuit, having conducted a de novo
review, did not reverse this Court's determination that there was no issue of material fact that
Dahl's conduct was intentional and volitional. (Doc. 97 at 5.)

Consequently, Plaintiffs' assertion that they have remaining claims "grounded in
negligence" is inapposite. The Court concluded and the Ninth Circuit affirmed that the conduct
of Dahl's was *intentional* as a matter of law. Therefore, any alleged negligence by Dahl's has no
bearing whatsoever on the intentional conduct claimed by Plaintiffs in the subject case. 57A Am.
Jur. 2d Negligence § 218 ("Negligence and intentional misconduct are contradictory terms—they
differ in kind rather than degree."); 57A Am. Jur. 2d Negligence § 30 ("Intent and negligence are
mutually exclusive; one cannot intend to injure someone by negligent conduct." (citing *Walser v.
Resthaven Memorial Gardens, Inc.*, 633 A.2d 466 (M.D. 1993)); *see also Sacco v. High Country
Indep. Press, Inc.*, 896 P.2d 411, 418 (Mont. 1995) (finding that negligent infliction of emotional
distress and intentional infliction of emotional distress are two independent torts).

Therefore, the only claims that remain are bodily injury damages claims.

covered by the policy. (Doc. 1 at 4.) Evidence of these factual events will most likely be admissible, in whole or in part, to substantiate Plaintiffs' bodily injury claims. Nonetheless, Plaintiffs are precluded from arguing that Dahl's was negligent and the Court will not instruct the jury on negligence.[3]

Therefore, Maryland's Motion in Limine 6 is granted.

## VI.    Motion in Limine 7 – Excluding evidence or testimony regarding the amount of the Plaintiffs' tuition payments and/or student loans

Maryland next argues that evidence of student tuition payments and student loan amounts would be irrelevant, prejudicial, confusing, and could mislead the jury into factoring any such figures into an award made for bodily injury, which is the proper measure of damages in this case. Maryland also concedes that "Plaintiffs are free to establish that they paid for their education and what their expectations were." (Docs. 91 at 29–33; 95 at 16.)

Plaintiffs argue that ruling on this issue is premature, and that tuition payments are relevant because they speak to the Plaintiffs' expectations of obtaining a quality education. Consequently, the failure of Dahl's to meet those expectations is the alleged cause of Plaintiffs' emotional distress. (Doc. 93 at

---

[3] The same analysis applies to the Montana Consumer Protection Act claim asserted in the underlying action against Dahl's. The Plaintiffs may introduce evidence regarding the alleged conduct of Dahl's, subject to Fed. R. Evid. 403, but the Court will not instruct the jury on a MCPA claim.

26–27.)

To be relevant, evidence presented must concern a fact that "is of consequence in determining the action." Fed. R. Evid. 401(b). It must also have a "tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a). However, not all relevant evidence is admissible. A court may exclude relevant evidence if its probative value is substantially outweighed by prejudice, confusing the issues, or has a tendency to mislead the jury. Fed. R. Evid. 403.

The proper measure of damages in this case is the amount of harm, here, physical manifestations of emotional distress, suffered by the Plaintiffs as a result of their experience at Dahl's. Though the evidence of Plaintiffs' payment of tuition may be relevant insofar as it establishes that the Plaintiffs paid for their education and thus had expectations of receiving some value in exchange, the specific amount paid by each Plaintiff is not relevant to the issues in this case. Plaintiffs' injuries are not correlated to each dollar spent, nor is the harm at issue a financial injury.

Furthermore, any probative value established by these figures is outweighed by the potential to confuse and mislead the jury. There exists a substantial potential that the jury may award damages taking into consideration tuition figures

that have little bearing on the extent of Plaintiffs' physical manifestations of emotional distress. Because Maryland's policy offers coverage only for "bodily injury" caused by an "occurrence" and precludes any coverage for a contractual breach, allowing evidence of the Plaintiffs specific tuition payments or student loan amounts is unduly prejudicial.

Therefore, the Court grants Maryland's Motion in Limine 7. Plaintiffs are free to testify that they paid for their educations and what their expectations were but may not introduce evidence of specific tuition payments or student loan amounts.

## VII. Motion in Limine 8 – Excluding any reference to or testimony about Dahl's alleged failure to keep proper records, and Motion in Limine 9 – Excluding any reference to or testimony about alleged inadequate instruction by Dahl's or Ms. Heikkila

Maryland argues that the Court should exclude any evidence regarding failure of Dahl's to keep proper records or provide adequate instruction because these alleged failures require expert testimony regarding the standard of care. Maryland contends that since the Plaintiffs have not identified an expert to testify regarding cosmetology instruction or college record keeping, the jury is not equipped to understand the evidence or render an informed decision on the standard of care. (Doc. 91 at 31–33.)

Plaintiffs assert that expert testimony regarding the standard of care is only necessary where a "matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (Doc. 93 at 27 (citing *Durbin v. Ross*, 916 P.2d 758, 764 (Mont. 1996).) According to Plaintiffs, maintaining competent and organized records is not beyond the jury's "common experience," nor is an expert needed to determine whether Ms. Heikkila's sexual exposure is inappropriate. (Doc. 93 at 26–27.)

The Court finds that evidence that Dahl's failed to keep proper records or provide adequate instruction could possibly be relevant to prove Plaintiffs' damage claims for bodily injury. Because the Court cannot foresee all possible trial scenarios that would implicate this evidence, the Court will reserve its ruling until trial.

However, the Court cautions the parties that it expects proper foundation to be made before such evidence is proffered. The Court will determine at the time of trial whether Plaintiffs are qualified to testify on these subjects or whether expert testimony is necessary to address proper record keeping and appropriate instruction. Thus, Maryland's Motions in Limine 8 and 9 are denied as premature and the Court reserves ruling until trial.

Accordingly, IT IS ORDERED that Defendant Maryland's Motions in

Limine (Doc. 88) are GRANTED IN PART, DENIED IN PART, and the Court

RESERVES RULING IN PART consistent with this opinion.

DATED this 4th day of December, 2017.

Dana L. Christensen, Chief Judge
United States District Court