IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION



BREANNE WALDEN, DANIELLE
DESCHENES AZURE, JESSICA
BLACKWEASEL, SABRINA
REMUS COYNE, BRITTANY
DEAN, JENNIFER DEMENT,
DANIELLE DUNCAN, JACKIE
GREAVU, BETH HAYES, JANA
HEILIG, KEALLIE LIETZ, JACKIE
MULLENNAX, SARA ONSAGER,
ANNA RADFORD, BARBARA
SLOAN, MOLLY STILSON, and
KYRA TILSON, Individually and as
Assignees of DB&D, LLC (d/b/a
DAHL'S COLLEGE OF BEAUTY),

Plaintiffs,

vs.

MARYLAND CASUALTY
COMPANY, and DOES 1-5, inclusive,

Defendants.

CV 13–222–M–DLC

ORDER

Before the Court is Defendant Maryland Casualty Company's ("Maryland") motion for summary judgment. Maryland seeks declaratory relief that the remaining claim set forth in the Plaintiffs' Complaint is precluded under the policy.

-1-

For the reasons explained below, the Court denies the motion for summary judgment.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs alleged various tort claims against Dahl's School of Beauty ("Dahl's") in the underlying action. Dahl's confessed judgment and assigned its rights to the Plaintiffs. This case is a declaratory judgment action regarding whether the CGL policy issued by Maryland provides coverage to Plaintiffs.

On October 7, 2015, the Court granted Maryland's motion for summary judgment finding that the policy excluded coverage for bodily injuries that were the unintended or unexpected consequences of intentional acts. The Montana Supreme Court decided *Employers Mutual Casualty Co. v. Fisher Builders, Inc.*, 371 P.3d 375 (Mont. 2016) (hereafter "*Fisher*") on April 19, 2016, during the pendency of Plaintiff's appeal to the Ninth Circuit Court of Appeals. On June 15, 2017, the Ninth Circuit reversed and remanded for further proceedings on the issue of whether Plaintiff's claims constitute an "occurrence" in accordance with the *Fisher* standard.

Subsequently, after receiving status reports from both parties, the Court determined that the only remaining issue in this case concerned the bodily injury claims asserted in Count I of Plaintiffs' Complaint. Maryland now moves for

summary judgment on that claim, contending there is no "occurrence" under the policy in accord with the two-part test articulated in *Fisher*.

## LEGAL STANDARD

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248. In ruling on a motion for summary judgment, a court must view the evidence "in the light most favorable to the opposing party." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 1863 (quoting *Anderson*, 477 U.S. at 255). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

The interpretation of an insurance contract is a question of law for the Court. *Babcock v. Farmers Ins. Exch.*, 999 P.2d 347, 348 (Mont. 2000). The Court will construe terms according to their usual, commonsense meaning. *Natl. Farmers Union Prop. & Cas. Co. v. George*, 963 P.2d 1259, 1261 (Mont. 1998). The interpretation should honor the objectively reasonable expectations of the insured. *Hanson v. Emp'rs Mut. Cas. Co.*, 336 F. Supp. 2d 1070, 1075 (D. Mont. 2004). Any ambiguities regarding coverage are construed against the insurer. *Id.* at 1073. "An ambiguity exists when a contract taken as a whole is reasonably subject to two different interpretations." *Id.* (citation omitted); *see also Modroo v. Nationwide Mut. Fire Ins. Co.*, 191 P.3d 389, 395 (Mont. 2008). However, a policy provision is not ambiguous just because the parties disagree as to its interpretation, and "courts will not distort contractual language to create an ambiguity where none exists." *Giacomelli v. Scottsdale Ins. Co.*, 221 P.3d 666, 672 (Mont. 2009). "[A]n insurer must defend all counts so long as one count potentially triggers coverage, even if the remaining counts would not be covered." *J&C Moodie Prop. LLC v. Deck*, 384 P.3d 466, 472 (Mont. 2016) (citing *State Farm Fire & Cas. Co. v. Schwan*, 308 P.3d 48, 51 (Mont. 2013)).

Th CGL Policy provides coverage for "bodily injury" caused by an "occurrence." (Doc. 50-2 at 33, 35.) "Bodily injury" refers to "bodily injury, sickness or disease sustained by a person ... includ[ing] mental anguish, mental injury, shock, fright or death resulting from bodily injury, sickness or disease." (*Id.* at 33.) An "occurrence" under the policy "means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 35.)

In *Fisher*, the Montana Supreme Court held that an "accident" may include intentional acts so long as the consequences of those acts are not objectively intended or expected from the standpoint of the insured. 371 P.3d at 378. The Montana Supreme Court additionally instructed that an intentional act may constitute an "occurrence" under a policy because the subsequent consequences may not have been intended or expected by the actor. *Id.* Therefore, the Montana Supreme Court established that the following two-part test should be utilized when determining whether the conduct in question constitutes an "accident": "(1) whether the act itself was intentional; and (2) if so, whether the consequences or resulting harm stemming from the act was intended or expected from the actor's standpoint." *Id.* (citing *Northwestern Nat. Cas. Co. v. Phalen*, 597 P.2d 720 (Mont. 1979)).

On appeal in this case, the Ninth Circuit relied upon *Fisher* and found that the "intentional acts" exclusion under an insurance policy did not preclude coverage because coverage under *Fisher* may still exist if the intentional acts caused unintended or unexpected consequences to the victim. *Id.* The Ninth Circuit held that under Montana law, an "occurrence" necessary to trigger coverage does not exist if: "1) the act itself was intentional, *and* 2) . . . the consequence or resulting harm stemming from the act was intended or expected from the actor's standpoint." *Walden v. Maryland Casualty Company*, 692 F. App'x 476, 477 (9th Cir. 2017) (citing *Fisher*, 371 P.3d at 378) (emphasis added); *see also Mid-Century Ins. Co. v. Windfall Inc.*, 2016 WL 2992114, at *3 (D. Mont. May 23, 2016) (citing *Fisher*, 371 P.3d at 378).

Maryland contends that *Fisher* merely categorizes insurance cases involving emotional distress claims into categories of "cases that find that the consequences of the intentional conduct were unexpected or unintended, thereby triggering coverage, and those that find that the consequences of the intentional conduct were expected or intended, in which case coverage is not triggered." (Doc. 114 at 13.) Maryland argues that the undisputed facts of this case falls under the latter category. (*Id.*)

For further support, Maryland relies on *Nw. Nat. Cas. Co. v. Phalen*, 597 P.2d 720 (Mont. 1979), *Millers Mut. Ins. Co. v. Strainer*, 663 P.2d 338 (Mont. 1983), *abrogated by Sherner v. Conoco, Inc.*, 995 P.2d 990 (Mont. 2000), and *Terry v. Nat'l Farmers Union Life Ins. Co.*, 356 P.2d 975 (Mont. 1960), to distinguish Dahl's conduct from the conduct in these three cases where the Montana Supreme Court found coverage existed. Maryland next relies on *Blair v. Mid-Continent Cas. Co.*, 167 P.3d 888 (Mont. 2007), *abrogated by Employers Mut. Cas. Co. v. Fisher Builders, Inc.*, 371 P.3d 375 (Mont. 2016), *Landa v. Assurance Co. of Am.*, 307 P.3d 284 (Mont. 2013), *New Hampshire Ins. Grp. v. Strecker*, 798 P.2d 130 (Mont. 1990), *Am. States Ins. Co. v. Willoughby*, 836 P.2d 37 (Mont. 1992), and *Smith v. State Farm Ins. Companies*, 870 P.2d 74 (Mont. 1994), as cases that are similar to the facts here, but where the Montana Supreme Court found no coverage.

In sum, Maryland asks this Court to determine that the emotional distress claims remaining in this case are the objectively natural and expected consequences of Dahl's alleged intentional conduct. Maryland contends that there is no genuine dispute of fact because there is no other plausible explanation other than Dahl's expected and intended to cause the Plaintiffs' emotional distress when it retaliated against them for exposing the conduct of Ms. Heikkila.

-7-

Plaintiffs argue that this case clearly implicates both intentional conduct that has intended and unintended consequences, which is the entire reason that the Ninth Circuit reversed this Court's previous order granting summary judgment to Maryland. (Doc. 119 at 5.) Plaintiffs assert that the cases cited by Maryland were all harmonized in *Fisher* and that the Court must now only consider the factors outlined in *Fisher*. (*Id.* at 13.) Plaintiffs concede that some of their underlying claims arise out of intentional conduct, but maintain that "a finding of intentional conduct does not end the coverage inquiry." (*Id.* at 19.) Plaintiffs contend that through the stipulated judgment in the underlying action, Dahl's admitted in part that it did not intend to injure Plaintiffs through their acts and omissions. (*Id.* at 22.) Plaintiffs also argue that because this case involves separate actors, their expectations, and the intended consequences of their actions, this case is not appropriate for summary judgment because those facts must be developed at trial. (*Id.* at 21.) Thus, fact issues exist which may implicate coverage both in terms of Dahl's negligent acts which Plaintiffs content were unintentional in nature, and intentional acts that had unintended and unforeseen consequences.

The Court finds that while the cases cited by Maryland in its opening brief are instructive, they predate *Fisher* which is now the controlling law in Montana. Further, the Ninth Circuit was clear in its memorandum disposition that the Court

must do a *Fisher* analysis and find (1) that the act was intentional and (2) that the consequence or resulting harm stemming from the act was intended or expected from the actor's standpoint. Here, there are disputed facts regarding whether Dahl's conduct was negligent or intentional, and if intentional, whether the consequences of its actions may have produced unintended and unforeseen consequences to the Plaintiffs. Consequently, the Court concludes that there exists issues of fact which precludes summary judgment.

Accordingly, IT IS ORDERED that Defendant Maryland's Motion for Summary Judgment (Doc. 113) is DENIED.

DATED this 4th day of May, 2018.

Dana L. Christensen, Chief Judge
United States District Court